In the Matter of C. A. WELCH, Insolvent.

## February 17, 1890.

Insolvency—Fraudulent Disposal of Property—Distribution without Releases.—An application by creditors of an insolvent debtor, under the statute, for leave to share in the estate without filing releases, should be denied, unless there has been a fraudulent concealment, disposal, or incumbering of property with intent to defraud creditors. An honest inability on the part of the debtor to account for the manner in which his property has been expended, does not justify granting such an application.

Same — Purchase of Homestead in Wife's Name.—The purchase of a homestead by the debtor and procuring the title to be conveyed to his wife, even though a statutory trust may result in favor of creditors, is not a sufficient ground for such an order, in the absence of the fraudulent intent specified in the insolvent law.

Same—Estoppel—Statements to Creditors.—Upon the hearing on such an application, the debtor is not estopped to deny his having ever had property which he had previously included in a statement of his property made to his creditor, and on the faith of which credit was given.

David Bradley & Co. (a corporation) made application to the district court of Big Stone county for an order for distribution of the estate of C. A. Welch (who, on January 13, 1888, had made an assignment under the insolvent law) without the filing of releases by the creditors. An order to show cause was thereupon issued by C. L. Brown, J., and upon the return-day testimony was taken before him, and after argument the application was denied, from which

order the creditor appealed. The evidence showed that Welch had been in business at Graceville, in Big Stone county, for about four years before the assignment, dealing in lumber, wagons, buggies, ploughs, and sleds, and being agent for Wood's self-binders. He began with $1,300 cash invested in his business and with no debts. He kept no records of sales (except sales on credit) nor any cash-account. He estimated that the profits on sales were about 25 per cent., less about 10 per cent. for bad debts. He could not state and had no record of the amount of goods bought within the two years next preceding the assignment. Some of the lumber bought on credit was used in building a house on a lot bought by him with his own money, ($135,) the title being taken in his wife's name, and the premises, after the house was built, being occupied and claimed as a homestead. The entire cost of the premises was about $1,000. He could not account for the disappearance of the profits made in his business, and the discrepancy between the amount on hand and what should be on hand, but stated that he spent a good deal of money in building a house, spent a winter in Texas, trying to dispose of property there, and kept three children at school away from home at a cost which he estimated at from $1,500 to $2,000 for the two years, and his wife and one child spent a winter in Virginia, which cost him a good deal. His family expenses, aside from his children's schooling, were from $1,500 to $2,000 a year. The $1,300 with which he began business he got from his wife; he afterwards put into the business $1,000, the proceeds of a note, making $2,300 in all. In the autumn of 1887 he became embarrassed. The verified schedules to the assignment showed accounts receivable, $2,148.87; lumber, buggies, wagons, and sleighs, $3,102.17; real estate, (in Graceville, not including the homestead,) $800; lumber sheds, wagon-scales, safe, and office furniture, $278,—in all $6,329.04. His indebtedness—all being for lumber, buggies, wagons, etc.,—was $10,386.01. On May 18, 1887, he made to David Bradley & Co. a written statement of his financial condition on that day, showing real estate in Texas, $10,000; personal property in Graceville, $1,500; merchandise in store, $2,000; good notes and accounts, $4,500—in all $19,000; and showing a total indebtedness of $3,200, and stating that he was

"worth above all debts, $15,800." In this statement he also agreed to notify David Bradley & Co. immediately upon any change in his business matters, whereby his net worth should be in anywise diminished. The debt to that creditor ($605.66) was for goods sold on the day of the statement and subsequently. As to this statement the insolvent testified that he did not own the Texas land and had no interest in it; that it belonged to his mother, from whom he had a power of attorney to sell it, and by whom he was authorized to use the proceeds of any sale in his business; that when he made the statement he had effected a sale of the land, but the sickness of one of the purchasers broke up the sale. He expected, if he made the sale, to use the entire proceeds ($8,000) in his business. "My mother did not expect me to have the money out and out, but I had the privilege of using it in the business."

*Geo. D. Emery*, for appellant.

*E. F. Crawford* and *Kitchel, Cohen & Shaw*, for respondent.

DICKINSON, J. This is an appeal from an order of the district court denying the petition of a creditor of an insolvent debtor for leave to share in the estate without filing releases. The question of fact presented to the district court upon such an application, under section 10 of the insolvent law of 1881, (Laws 1881, *c.* 148,) is as to whether the insolvent debtor has "fraudulently concealed, or fraudulently incumbered or disposed of, any of his property with intent to cheat and defraud his creditors." To entitle the petitioning creditor to an order dispensing with the requirement to file a release, there must have been a fraudulent concealment, disposal, or incumbrance of property, and with the intent to cheat and defraud creditors. Mere negligence or want of prudence in business affairs, living beyond one's income, or honest inability to show fully how his property has been expended and disposed of, do not necessarily entitle the creditor to such an order. These things are not necessarily inconsistent with good faith and honesty of purpose. In the case before us, while the debtor was confessedly unable to account for the disappearance of a considerable amount of property, it appeared that he kept no general books of account, except for charges for goods sold on credit; never made such an examination as to inform himself as to his financial

condition; and made large expenditures for family expenses, without knowing what they amounted to. The case is such that the finding of the district judge, that there had not been any concealment or disposal of property with fraudulent intent, should not be disturbed on appeal.

The mere purchase of a lot of land, and constructing a residence on it, which became the debtor's homestead, and paying for these out of the proceeds of his business, was not a fraudulent concealment or disposal of his property, entitling the debtor to the order sought. It was not even shown that he was *then* insolvent. Though it be conceded that, because the title to the land so purchased was conveyed to the wife of the purchaser, a trust may have resulted in favor of his creditors, as provided by Gen. St. 1878, c. 43, § 8, that alone does not avail the creditor in this application. This is not a proceeding to have such a trust declared, nor to enforce it; and it is immaterial whether or not the facts may have been such as to give rise to a resulting trust, if those facts do not present also a case within the provisions of the insolvent law above recited; that is, the transaction must involve the fraudulent intent specified, in order to bring it within the scope of the proviso in section 10.

There was no error in allowing the debtor in this proceeding to testify that in fact he never owned some of the property named in the schedule, Exhibit D, which he had previously presented to this creditor as showing the property then owned by him, and on the faith of which credit had been given. That statement was not a written contract, the terms of which could not be contradicted by parol evidence, but a mere representation of a fact, having no other effect than if it had been made orally. The debtor was not estopped by the statement from showing in this proceeding that in fact he never had such property. An element wanting to create an estoppel preventing the debtor testifying to the truth in this proceeding, is prejudice to the creditor, if he be not now permitted to avail himself of the estoppel. The creditor never purchased the property referred to in the schedule, and has no right to resort for the payment of his debt to property never owned by the debtor. Nor in this proceeding does he seek to do so. The question of fact is here presented whether the debtor

owned this property, and has fraudulently concealed or disposed of it. The creditor is prejudiced by allowing the debtor to now set forth the truth, only in this way: If the debtor's mouth is now closed, it will *appear* from his former representation that he had this property; and from the fact that it was not included in the assignment, and perhaps from other circumstances, it may be claimed to have been proved that there has been a fraudulent concealment or disposal of it; and for that reason the creditor should have the right specified in the proviso to section 10 of the statute. On the other hand, if the truth be disclosed, only a case of fraudulent representation will be shown; and for that the statute does not allow the remedy here sought. In other words, the only prejudice to the creditor from allowing the truth to be stated is that by that means he will be prevented from obtaining a legal remedy upon a state of facts which does not perhaps exist. Of course, if there was a fraudulent representation, the creditor may have been prejudiced by that; but that is not the question here. He suffers no prejudice, in contemplation of the law, from the disclosure of the truth in this inquiry concerning the facts. Whatever remedy he may have for the fraud may be pursued, but the doctrine of estoppel is not applicable to make a fraudulent representation the cause for legal relief which the statute allows only upon other grounds.

Order affirmed.